SAM TAYLOR, Judge.
Jimmy Lee Curry was convicted by a Montgomery County jury of first-degree robbery and was sentenced to ten years’ imprisonment. He appeals on four grounds.
I
Appellant contends that the evidence did not support a conviction for robbery in the first degree; specifically he asserts that the state failed to prove that his conduct occurred while “in the course of committing a theft.”
Robbery in the first degree is defined in § 13A-8-41, Code of Alabama 1975, in pertinent part as follows:
“(a) A person commits the crime of robbery in the first degree if he violates section 13A-8-43 and he:
(1) Is armed with a deadly weapon or dangerous instrument; ...”
Section 13A-8-43 states that third-degree robbery is committed if “in the course of committing a theft” the perpetrator
“(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
The term “in the course of committing a theft” is defined in § 13A-8-40, Code of Alabama 1975, as follows:
“(b) ‘In the course of committing a theft’ embraces acts which occur in an attempt to commit or the commission of theft, or in immediate flight after the attempt or commission.”
The state’s evidence in this case tends to establish that on July 6, 1982, Deborah Johnson and Vivian Diane Shirley were employed at Marco’s Restaurant on the Southern By-Pass in Montgomery, Alabama. At approximately 3:00 a.m., two men came into Marco’s to drink coffee. They were the only two customers in the restaurant at that time, so both Miss Johnson and Miss Shirley had ample opportunity to observe the men. Miss Shirley remembers them “making remarks and slurs about the *475 coffee and ... about me waiting on them.” As the men left, one of the men walked back to a place where he could look into the restaurant office and peered inside. They then paid at the cash register and walked outside. The men stood outside for a few minutes, got into separate cars and left. One of the cars was a red and black car and the other was blue with a darker top. Miss Johnson and Miss Shirley began to closely observe the movements of the men in their cars; both drove slowly by the restaurant several times. They saw the blue car pass back and forth on the highway in front of the restaurant and it twice was driven through the driveway of the motel next to the restaurant. The red and black car left and the blue car was then parked in Marco’s parking lot by the side of the restaurant for about ten minutes. The blue car was then driven across the street to a truck stop; it circled the truck stop and left.
About five minutes later, the blue car pulled up to Marco’s side entrance again and both of the men got out and entered the side door of the restaurant. The taller of the two men produced and pointed a pistol at Miss Shirley and Miss Johnson and said “This is a holdup.” The taller man had on gray pants and a blue shirt. The women recognized these two men as the same two men who had been at Marco’s a few minutes before. Both Miss Shirley and Miss Johnson identified the appellant, Jimmy Lee Curry, in court as being the shorter of the two men. When Curry and his accomplice entered the restaurant and pointed the gun, Miss Johnson and Miss Shirley ran into the office, locked the door, and called the police. While the women were locked in the office, they heard footsteps in the restaurant. The two women waited in the office until the police came and told them it was safe to come out. Nothing was missing from the restaurant and the cash register had not been broken into.
About 30 to 40 minutes after these events, Miss Johnson and Miss Shirley were taken by the officers to the St. Francis Motel where they saw a blue car in which two men were seated. Miss Johnson and Miss Shirley identified the blue car as the one that one of the men had driven earlier around Marco’s and in which Curry and his accomplice had driven to the restaurant just prior to the robbery. As the police approached the blue car at the St. Francis Motel, one of the two men got out and ran. The other man, Curry, was apprehended by police and identified by both the women at the scene as being one of the two men who had entered Marco’s and tried to hold them up.
It is clear from our statute that the definition of robbery in the first degree was enlarged by the new criminal code to encompass the former offenses of assault with intent to rob and attempted robbery. Marvin v. State, 407 So.2d 576 (Ala.Cr. App.1981). As stated in Petty v. State, 414 So.2d 182, 183 (Ala.Cr.App.1982):
“The [new] statute defines the crime of robbery as including the attempt to commit robbery and requires no actual theft or asportation of property.”
The court did not err in its application of the law.
Neither did the court err in denying the motions for new trial on the basis that there was conflicting evidence as to what clothing the appellant was wearing. Such conflicts are matters to be resolved by the jury. Garrison v. State, 416 So.2d 793 (Ala.Cr.App.1982); Stewart v. State, 405 So.2d 402 (Ala.Cr.App.1981).
II
Appellant contends that the trial court erred in denying his motion for a mistrial on the grounds that one of appellant’s character witnesses was placed under arrest in the courthouse corridor. Officer Edward T. Davis arrested the witness 15 minutes after the jury left for lunch, after determining that no jurors were present at the arrest scene. He stated that no juror saw the witness in handcuffs. Thus, no prejudice resulted. Arrest in sight of the jurors would not necessarily, or in every instance, result in mistrial.
*476 III
Appellant next contends that the court erred in failing to instruct the jury on the offense of robbery in the second degree and robbery in the third degree. Since the testimony that one of the robbers had a gun was undisputed, this crime constituted robbery in the first degree. See § 13A-8-41(a)(1), Code of Alabama, 1975. The case was tried largely on the issue of identity. The court did not err, therefore, in failing to give charges on lesser degrees of robbery. Hollins v. State, 415 So.2d 1249 (Ala.Cr.App.1982); Byrd v. State, 421 So.2d 1344 (Ala.Cr.App.1982); Elmore v. State, 414 So.2d 175 (Ala.Cr.App.1982).
We further note that these charges were not requested.
IV
The last issue appellant raises on appeal involves a written charge submitted by appellant which was refused by the trial judge. That charge read as follows: “Ladies and gentlemen of the jury, your verdict must be unanimous. The State of Alabama does not provide for a split verdict. In order to convict or acquit the Defendant all twelve of you must agree.” Beside the checkmark indicating that the charge was refused, the trial judge wrote the word “oral.” However, an examination of the record reveals that the substance of the charge was not given as part of the oral charge. After the jury charge, appellant moved for further instructions, but not on the grounds that the court failed to instruct on juror unanimity.
After the verdict was returned, the jurors were polled and all were in agreement as to the verdict; it was in fact unanimous. The error, then, was not injurious to the substantial rights of appellant, but was demonstrated to be harmless.
Since appellant failed to properly preserve the issue of the omission in the charge, there is nothing for this court to consider. Appellant himself cites the controlling case of Allen v. State, 414 So.2d 989 (Ala.Cr.App.1981), aff'd, 414 So.2d 993 (Ala.1982), in which this court, speaking through Judge Tyson; held that the rule giving an automatic exception to jury charges had been abolished. To properly preserve the issue for our review, appellant should have objected to the charge and stated his grounds before the jury retired. Peterson v. State, 441 So.2d 1019 (Ala.Cr. App.1983). See Alabama Rules of Criminal Procedure, Temporary Rule 14.
Appellant finally asserts that regardless of the standards articulated in Allen, this court should search the record for errors prejudicial to him. Appellant’s argument is erroneous. The plain error doctrine mandating a search of the record for errors affecting the substantial rights of the appellant is applicable only in cases in which the death penalty has .been imposed. A.R.A.P. 45A, McGinnis v. State, 382 So.2d 605 (Ala.Cr.App.1979), cert. denied, 382 So.2d 609 (Ala.1980).
For the reasons set out above, the decision of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.